412 A.2d 487

**Marvin L. WOLBACH and Esther Wolbach, his wife, Appellants,**

**v.**

**John A. FAY, James P. Calhoun and Madelyn C. Calhoun, his wife, and William G. Barber and Caroline N. Barber, his wife.**

Supreme Court of Pennsylvania.

Argued Dec. 10, 1979.

Decided March 20, 1980.

Michael J. Dowd, John Kocsis, III, Athens, for appellant.

W. Marshall Dawsey, Philadelphia, for appellees, Mr. and Mrs. Calhoun.

Robert J. Murphy, Towanda, for appellees, Mr. and Mrs. Barber.

Maurice L. Epstein, Towanda, for appellee, John A. Fay.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

On August 11, 1974, at approximately 9:55 p. m., appellant Marvin L. Wolbach was operating a truck on Legislative

Route 08081 in Athens Township, Bradford County. He pulled off the road to help a friend, Gary Miller, who was having trouble starting his car. He parked in front of a car owned by appellee John A. Fay. While Wolbach was standing between his truck and Fay's car, a car driven by appellee Caroline Barber struck Fay's car, which in turn struck Wolbach, seriously injuring him.

Wolbach and his wife, Esther Wolbach, also appellant herein, sued Fay in the Court of Common Pleas of Bradford County. They alleged he was negligent in leaving his car unattended, without parking lights or flashers. They also sued James P. Calhoun and Madelyn C. Calhoun, his wife, appellees herein and owners of the property in front of which the vehicles were parked. The Calhouns operate a farm market on the property. Appellants alleged they were negligent in failing to provide adequate parking and lighting, making it necessary for the vehicles to park partly on the road. Fay joined Caroline Barber and her husband, William G. Barber, as additional defendants.

Before filing suit, at the request of an agent of the Barbers' insurer, Marvin Wolbach signed a release which stated that in consideration of the payment of $10,000, Wolbach released the Barbers from all claims and:

> "Further release[d] any and all persons or entities, whether named herein or otherwise, who may be jointly or severally liable in tort for all known or unknown personal injuries, death, or property damage in any way arising out of or resulting from or to result from the . . . [accident]."

The court of common pleas held the release barred recovery from any defendant. It granted a defense motion for summary judgment. The Superior Court affirmed per curiam without an opinion. We granted a petition for allowance of appeal.

The issue before us is whether it was proper to enter summary judgment. Rule of Civil Procedure 1035(b) provides that summary judgment may be entered if on "the pleading, depositions, answers to interrogatories, and admis-

242

sions of file, together with the affidavits, if any . . . there is no genuine issue as to any material fact . . .." Appellants claim there was an issue as to whether the release was valid as applied to the defendants other than the Barbers. The effect of a release must be determined from the ordinary meaning of its language. *Estate of Bodnar*, 472 Pa. 383, 372 A.2d 746 (1977). In *Hasselrode v. Gnagey*, 404 Pa. 549, 172 A.2d 764 (1961), a release given to a particular individual and "any and all other persons . . whether herein named or not" was held to be applicable to all tort feasors despite the fact they were not specifically named. Reformation of the release would require a showing of fraud or mutual mistake by clear, precise, and convincing evidence. *Yoo Hoo Bottling Co. of Pa., Inc. v. Leibowitz*, 432 Pa. 117, 247 A.2d 469 (1968).

Appellants contend the release was procured by fraud, that Marvin Wolbach did not know he was releasing anyone other than the Barbers, and that he did not contemplate doing so. The alleged fraud consisted of the failure of the insurance agent to fully explain the effect of the release. However, Wolbach admitted in a deposition that the release was in clear language, that he read it, and that he understood the meaning of the words. Since there is no allegation of actual misrepresentation and appellant had an opportunity to read the release and admitted he understood it, we find there was no fraud. Appellant's admissions cast doubt on the allegation of lack of knowledge or contemplation of the release of all parties. If the allegation were accepted, it would establish only a unilateral and not a mutual mistake. The facts as alleged by appellants provide no basis for setting aside the release. It was proper to enter summary judgment.

The order of the Superior Court is affirmed.

LARSEN, J., files a dissenting opinion which FLAHERTY, J., joins.

LARSEN, Justice, dissenting.

I dissent.

This case is a classic example of the manifest injustice that often arises when an unwary and unsuspecting individual attempts to amicably settle a claim with an insurance company. The majority concludes that the release in question insulates from possible liability not only appellees William G. and Caroline Barber, but also appellees James P. and Madelyn C. Calhoun and appellee John A. Fay. The majority reaches this conclusion despite the fact that appellants negotiated the settlement and release with the agent of the Barbers' insurance company only. Appellants entered into settlement negotiations with none of the remaining appellees or their agents.

The deposition of the Barbers' insurance adjuster clearly indicates that he had no intention of negotiating a settlement and release for any party other than the Barbers. The deposition in relevant part is as follows:

Q. Now did you at any time specifically mention to Mr. or Mrs. Wolbach that this release was releasing anyone besides William C. Barber or Caroline Barber?

A. No.

Q. At the time this release was executed on October 21, 1974, did you have any knowledge that there were any other parties involved in this accident?

A. Yes.

Q. You were aware of this?

A. Yes.

Q. You were merely concerned with doing your job for your company, for your insured?

A. Right.

Q. And you had absolutely no intent of representing Mr. Fay in this release?

A. No.

Q. Did you have any intention of negotiating any release for James or Madeline Calhoun?

A. No.

Yet, because of a single boilerplate provision in the release, appellants are barred from litigating their claim against appellees James P. and Madelyn C. Calhoun and appellee John A. Fay.

The practical effect of the majority's decision is to further encourage deceptive practices when negotiating settlements and releases. I believe that, as a matter of public policy, a release should not inure to the benefit of third parties who took no part in the settlement negotiations.

I would, therefore, reverse the grant of summary judgment and remand this case for a trial on the merits as to the liability of appellees James P. and Madelyn C. Calhoun and appellee John A. Fay.

FLAHERTY, J., joins in this dissenting opinion.